1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9   SAMUAL BARAJAS,                                    CV F   05-1646 LJO DLB HC

10                          Petitioner,               FINDINGS AND RECOMMENDATIONS
                                                      REGARDING PETITION FOR WRIT OF
11          v.                                        HABEAS CORPUS

12                                                    [Docs. 1, 13, 19]
     J.D. STOKES, WARDEN,

13
                            Respondent.
14   _____/

15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

     pursuant to 28 U.S.C. § 2254.
17

18                                          BACKGROUND

19          On September 18, 2003, the Fresno County District Attorney filed an amended

20   information charging Petitioner with: count 1 - bringing drugs into a prison (California Penal

     Code § 4573);[1] and count 2 - drug transportation (Health & Saf. Code § 11352(a)).  (CT 63-72.)
21
     It was further alleged that Petitioner had two prior "strike" convictions (§§ 667(c)-(j) &
22
     1170.12(a)-(e)).  (Id.)  Petitioner pled not guilty to both counts and denied the prior strike
23
     conviction allegations.  (RT 15-16.)
24
            On October 3, 2003, a jury found Petitioner guilty on both counts.  (CT 181-85; SCT 39-
25
     41; RT 1877-78.)  The court found the allegations of the prior strike convictions to be true.  (CT
26
     183; RT 1902-04.)
27

28
            [1] All further statutory references are to the California Penal Code unless otherwise noted.

                                                    1

1       On November 13, 2003, Petitioner was sentenced to an indeterminate term of 25 years to

2   life pursuant to the "Three Strikes" law (§§ 667(e)(2)(A) & 1170.12(c)(2)(A)).  The term

3   imposed on count 1 was stayed pursuant to section 654.[2]  (SCT 62, 64.)

4       On December 1, 2003, Petitioner filed a notice of appeal in the California Court of

5   Appeal, Fifth Appellate District. (Lodged Doc. No. 1.)  On January 19, 2005, Petitioner's

6   conviction was affirmed.  (Lodged Doc. No. 4.)

7       On February 24, 2005, Petitioner filed a petition for review with the California Supreme

8   Court.  (Lodged Doc. No. 5.)  The petition was denied on March 30, 2005.  (Lodged Doc. No. 6.)

9       Petitioner did not file a petition for writ of habeas corpus in any state court.

10      Petitioner filed the instant petition on December 30, 2005.  Respondent filed an answer to

11  the petition on June 12, 2006, and Petitioner filed a traverse on August 2, 2006.

12  STATEMENT OF FACTS[3]

13      Correctional Officer Mario Maldonado testified that, in a monitored and
recorded telephone conversation from prison, [Petitioner] spoke in Spanish to a

14  female, assumed to be his wife, and asked that she send a "quarterly package" to
another inmate.  Inmates are allowed to receive a package every three months.

15  The other inmate identified in the conversation was Najera, identified by his first
name "Gamaliel." [Petitioner] attempted to convey the proper spelling of the

16  name, but the female repeated it as C-A-M-E-A-L-E.  The female caller stated she
would send the package the next day and would use her mother's name, "Maria."

17      The following day, [Petitioner] placed another phone call to the same
female. [Petitioner] restated Najera's first name and asked the female, "Did you

18  make it?"  She replied that the package was ready but still open "so they can
weigh it."

19      Correctional Officer John Brown reviewed [Petitioner's] prison file.  The
phone number [Petitioner] had dialed from prison matched the number given as

20  [Petitioner's] wife, Dalia, on his next of kin notification.  Officer Brown asked
that the mailroom be on the lookout for a quarterly package addressed to Najera

21  and sent by "Maria Villarreal."[4]

22      Approximately a week later, such a package arrived from "Maria
Villarreal" with Najera's first name spelled C-A-M-E-A-L-E.  Inside the package
were four Gillette deodorant containers which were found to contain 3.92 grams

23  of heroin, one gram of cocaine and 2.68 grams of methamphetamine.  Officer
Brown had the mailroom inform Najera that the package had been damaged and

24  returned to sender.

25

26  [2]  Petitioner was charged and tried together with codefendant Gameliel Najera.

27  [3]  The Court finds the Court of Appeal correctly summarized the facts in its January 19, 2005, opinion.
Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

28  [4]  Maria Villarreal is Dalia Baraja's mother's maiden name.

1

2          Several days later, [Petitioner] called the same number. [Petitioner]
        informed his brother, who answered the phone, that the package had been
3       returned.⁵ He asked that as soon as Dalia received the returned package, she tape
        it and send it back immediately.
4          Officer Brown obtained a telephonic warrant for the phone number
        [Petitioner] had been calling. The number was assigned to Dalia Barajas and
5       listed her address. Officer Brown obtained a search warrant for the address. In a
        subsequent search, correspondence between [Petitioner] and his wife and
6       quarterly package forms addressed to Najera and another inmate were seized.
           [Petitioner] denied having a package sent to Najera. Najera denied having
7       an agreement with [Petitioner] to allow someone outside the prison to send him a
        quarterly package.

8  (Opinion, at 2-3.)

9                                    DISCUSSION

10  A.     Jurisdiction

11         Relief by way of a petition for writ of habeas corpus extends to a person in custody

12  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws

13  or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,

14  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered

15  violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises

16  out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.

17  28 U.S.C. § 2254(a); 2241(d).

18         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

19  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

20  enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114

21  F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

22  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

23  1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059

24  (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant

25  petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

26  B.     Standard of Review

27         This Court may entertain a petition for writ of habeas corpus "in behalf of a person in

28  _____

        ⁵ It was stipulated that [Petitioner] was talking to his brother during this phone conversation.

                                        3

1   custody pursuant to the judgment of a State court only on the ground that he is in custody in

2   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

3          The AEDPA altered the standard of review that a federal habeas court must apply with

4   respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

5   Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus

6   will not be granted unless the adjudication of the claim "resulted in a decision that was contrary

7   to, or involved an unreasonable application of, clearly established Federal law, as determined by

8   the Supreme Court of the United States;" or "resulted in a decision that was based on an

9   unreasonable determination of the facts in light of the evidence presented in the State Court

10  proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of

11  the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v.

12  Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply

13  because that court concludes in its independent judgment that the relevant state-court decision

14  applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations

15  omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

16         While habeas corpus relief is an important instrument to assure that individuals are

17  constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392

18  (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a

19  criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v.

20  Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's

21  factual determinations must be presumed correct, and the federal court must accept all factual

22  findings made by the state court unless the petitioner can rebut "the presumption of correctness

23  by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

24  S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day,

25  110 F.3d 1380, 1388 (9th Cir. 1997).

26         Because the California Supreme Court's opinion is summary in nature, however, this

27  Court "looks through" that decision and presumes it adopted the reasoning of the California

28  Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker,

1  501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas

2  review, "look through" presumption that higher court agrees with lower court's reasoning where

3  former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n. 7

4  (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining

5  whether state court's rejection of petitioner's claims was contrary to or an unreasonable

6  application of federal law under § 2254(d)(1)).

7  C.      Confrontation Clause Violation

8         Petitioner contends that the state court's rejection of his claim of a violation of his Sixth

9  Amendment right to confront witnesses was contrary to, or involved an unreasonable application

10  of, clearly established federal law.

11        The Court of Appeal properly summarized the procedural background of Petitioner's

12  claim as follows:

13         Mrs. Barajas was subpoenaed to testify at [Petitioner's] trial.  She asserted
    her Fifth Amendment privilege against self-incrimination and refused to testify.
14  The prosecutor asked that Mrs. Barajas be declared an "unavailable witness."
    Evidence Code section 240 provides, in pertinent part, that a witness be exempted
15  from testifying on the ground of privilege.  The trial court questioned the
    prosecutor as to the materiality of Mrs. Barajas's testimony.  The prosecutor made
16  the following offer of proof:
         "Officer Brown went to [Mrs. Barajas's] residence on
17  August 17th of 2002.  He interviewed [Mrs. Barajas] and she made
    some statements that basically stated that she was, in fact, sending
18  packages containing narcotics into the prison.   She also says that
    the last two or three packages have been sent in another inmate's
19  name.  The packages would never be sent in Barajas' name for the
    purpose of concealing his identity. [¶] She also would say that she
20  was receiving money and she wanted to know where this particular
    money was coming from.  And so she would ask Barajas about that
21  and he would say it was none of her business and just do what he
    wanted her to do. [¶] She received approximately, according to
22  [Mrs. Barajas], $1,500 in money orders.  She states that she knew
    the money had to do with narcotics because of what Barajas was
23  doing prior to being placed into custody.  And that is the reason
    why he is in prison now would be her statement."
24         Appellants objected to the proffered testimony on hearsay grounds.  The
    prosecutor argued further that the testimony was admissible under Evidence Code
25  section 1230 as a statement against penal interest, which requires a finding of
    witness unavailability.  The trial court agreed, and allowed a redacted version of
26  Mrs. Barajas's statements made to Officer Brown.
         Officer Brown subsequently testified that he spoke to Mrs. Barajas
27  following the search of her residence.  According to Officer Brown, Mrs. Barajas
    stated she had sent a package to the prison addressed to someone other than
28  Barajas.  Mrs. Barajas told Officer Brown that narcotics were concealed in the

1    deodorant containers, and that she received money orders in return.

2        The Confrontation Clause protects a defendant from unreliable hearsay evidence being

3    presented against him during trial.  See U.S. Constitution, Amendment VI.  In Crawford v.

4    Washington, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation

5    Clause of the Sixth Amendment bars the state from introducing out-of-court statements which

6    are testimonial in nature, unless the witness is unavailable and the defendant had a prior

7    opportunity to cross-examine the declarant.  The Court categorically rejected, as inconsistent

8    with the Constitution, hearsay exceptions for statements deemed otherwise "reliable" despite the

9    absence of prior cross-examination:

10            [D]ispensing with confrontation because testimony is obviously
             reliable is akin to dispensing with a jury because a defendant is
11           obviously guilty.  This is not what the Sixth Amendment
             proscribes.
12
     Crawford, 541 U.S. at 62.
13
         Prior to Crawford, the Confrontation Clause was not violated by the admission of hearsay
14
     evidence if it fell within a firmly rooted exception to the hearsay rule or otherwise contained
15
     "particularized guarantees of trustworthiness."  Lilly v. Virginia, 527 U.S. 116, 123-24 (1999);
16
     Ohio v. Roberts, 448 U.S. 56, 66 (1980).  In Bockting v. Bayer, 399 F.3d 1010, as amended on
17
     denial of rehearing by 408 F.3d 1127 (9th Cir. 2005), the Ninth Circuit Court of Appeals held the
18
     Supreme Court's decision in Crawford applied retroactively to cases on collateral review.
19
     However, on February 28, 2007, the United States Supreme Court issued its decision in Whorton
20
     v. Bockting, 127 S.Ct. 1173 (2007), reversing the Ninth Circuit finding that Crawford does not
21
     apply retroactively to cases on collateral review.
22
         Violations of the Confrontation Clause are subject to harmless error analysis set forth in
23
     Chapman.  See, e.g., Lilly v. Virginia, 527 U.S. 116, 139-40 (1999); Delaware v. Van Arsdall,
24
     475 U.S. 673, 684 (1986).  Thus, if Crawford error is found to exist, the next step is to determine
25
     whether the error was harmless.  Here, the state court of appeal identified and applied the proper
26
     standard of review for harmless error - harmless beyond a reasonable doubt under Chapman.  If
27
     the state court's application of the harmless error standard was objectively unreasonable, "habeas
28

1   relief may still be denied absent a showing of prejudice." Buckley v. Terhune, 441 F.3d 688, 697

2   (9th Cir. 2006); quoting Medina v. Hornung, 386 F.3d 872, 877 (9th Cir. 2004).  In other words,

3   even if the state court's decision was contrary to or an unreasonable application of Chapman, this

4   Court must independently examine whether the error was prejudicial under Brecht v.

5   Abrahamson, 507 U.S. 619: "errors are harmless if they do not have a 'substantial and injurious

6   effect or influence in determining the jury's verdict.'" Inthavong v. LaMarque, 420 F.3d 1055,

7   1059 (9th Cir. 2005); see also Hernandez v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002)

8           Here, Petitioner's petition for review was denied on March 30, 2005, and his conviction

9   became final ninety days later on June 28, 2005, when the ninety (90) day period for seeking

10  review in the United States Supreme Court expired;[6] therefore, the Court of Appeal properly

11  applied Crawford to the state appeal.  In fact, at the Court of Appeal, Respondent conceded that

12  the statements made by Mrs. Barajas were inadmissible under Crawford, but argued the error was

13  harmless beyond a reasonable doubt.  In finding the error harmless, the Court of Appeal stated:

14          In this case, the statements made by Mrs. Barajas to Officer Brown did not
        mention Najera by name.  There was, however, other substantial evidence that
15      Najera was involved.  A package with drugs was sent to him in his name.  Najera
        was told by prison officials that the package was returned due to damage.  This
16      information was relayed to Barajas by someone other than prison officials.
            Other evidence also showed overwhelming guilt as to Barajas.  Officer
17      Maldonado testified that, in two separate recorded telephone conversations,
        Barajas, in essence, asked Mrs. Barajas to send a package in Najera's name.
18      Najera's first name was spelled incorrectly during the telephone conversation and
        on the package that was later received at the prison.  Barajas also acknowledged,
19      in a telephone conversation to his brother, that he knew the damaged package had
        been returned by the prison mailroom, even though it was not addressed to him.
20          The evidence of [Petitioner's] guilt, without the hearsay evidence, was
        solid and overwhelming.  Based on the evidence, we find that the admission of
21      Mrs. Barajas's statements to Officer Brown did not contribute to the verdict.
        Accordingly, the error was harmless beyond a reasonable doubt.
22
    (Opinion, at 8-9.)
23
         Petitioner has failed to demonstrate that the Court of Appeals' conclusion that the
24
    admission of Mrs. Barajas's statements was harmless beyond a reasonable doubt "resulted in a
25
    decision that was contrary to, or involved an unreasonable application of, clearly established
26

27      [6] Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999)
    (concluding period of "direct review" includes the period within which one can file a petition for a writ of certiorari
28  in the United States Supreme Court); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998).

1  Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision

2  that was based on an unreasonable determination of the facts in light of the evidence presented in

3  the State Court proceeding."  28 U.S.C. § 2254(d).

4        For the same reasons identified by the Court of Appeal, habeas relief is not warranted

5  here because, in the context of the other evidence admitted at trial, the admission of such

6  testimony did not have a substantial and injurious influence on the jury's verdict.  There was

7  ample evidence, aside from Mrs. Barajas's statement, that Petitioner knowingly had the package

8  sent to inmate Najera.  There were taped phone conversations between Petitioner and Mrs.

9  Barajas, discussing a package to be sent to codefendant Najera.  (RT 288-304, 316-331, 365,

10  394-397.)  Mrs. Barajas incorrectly spelled codefendant Najera's first name over the phone and

11  on the package - "Cameale."  (RT 397-404, 413.)   Even though the package was not addressed

12  to Petitioner, he was aware that the prison mailroom was returning the package.  He then told his

13  brother Preciliano to have Mrs. Barajas tape the package back up and send it back immediately.

14  (RT 447-451.)  In light of this very damaging evidence, it cannot be said that the statement of

15  Mrs. Barajas's had a "substantial and injurious influence on the jury's verdict." Brecht, 507 U.S.

16  at 637-638.

17        In his traverse, although Petitioner points to several facts that he claims were omitted by

18  the state court of appeal, Petitioner points out nothing that was not already before and considered

19  by the jury at the trial court.  Specifically, Petitioner contends that the proper procedure was not

20  followed by correctional officer Brown (see RT 471-472, 477-481, 502-516), Mrs. Barajas's was

21  never charged with a crime (see RT 520-522), two address labels addressed to inmates Garza and

22  Najera were located at Mrs. Barajas's residence (see RT 452-459, 519), Concepcion Valdez, Jose

23  Valdez's mother, testified that she received items mailed by Dalia and Preciliano Barajas to be

24  sent to Petitioner (see RT 861-863, 1206-1207, 121201213, 1636-1641, 1652), and the package

25  identified by Petitioner in the telephone conversation with his brother Preciliano Barajas, was the

26  package sent by Concepcion Valdez (see RT 1221-1223).  Simply pointing out this evidence

27  does not demonstrate that the state courts' decision "resulted in a decision that was contrary to, or

28  involved an unreasonable application of, clearly established Federal law, as determined by the

1  Supreme Court of the United States;" or "resulted in a decision that was based on an

2  unreasonable determination of the facts in light of the evidence presented in the State Court

3  proceeding." 28 U.S.C. § 2254(d). This court cannot overturn the jury's resolution of the

4  conflicting evidence in this case. Federal habeas courts must respect the province of the jury to

5  determine the credibility of witnesses and resolve conflicts in the evidence, and the Court

6  assumes all conflicts were resolved in a manner which supports the verdict. Jackson v. Virginia,

7  443 U.S. 307, 319-324 (1979). In determining whether Mrs. Barajas's statements were harmless

8  beyond a reasonable doubt, the State court properly reviewed and analyzed the record finding

9  that any error was harmless, and the instant petition is without merit.

10                                    RECOMMENDATION

11        Based on the foregoing, it is HEREBY RECOMMENDED that:

12        1.      The instant petition for writ of habeas corpus be DENIED; and

13        2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

14        This Findings and Recommendations is submitted to the assigned United States District

15  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

16  the Local Rules of Practice for the United States District Court, Eastern District of California.

17  Within thirty (30) days after being served with a copy, any party may file written objections with

18  the court and serve a copy on all parties. Such a document should be captioned "Objections to

19  Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served

20  and filed within ten (10) court days (plus three days if served by mail) after service of the

21  objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

22  636 (b)(1)(C). The parties are advised that failure to file objections within the specified time

23  may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th

24  Cir. 1991).

25        IT IS SO ORDERED.

26        Dated:   **May 21, 2007**                    _____/s/ **Dennis L. Beck**_____
                                                        UNITED STATES MAGISTRATE JUDGE

27

28